UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

CYBER ZONE E-CAFE, INC.,
a Florida limited liability company,
JEFFREY M. REED, an individual

           Plaintiffs,

-vs-                                                 Case No.  5:10-cv-149-Oc-10GRJ

BRAD KING, State Attorney, Fifth Judicial
Circuit, ED DEAN, Sheriff of Marion County,
Florida, SAMUEL WILLIAMS, Police Chief,
Ocala, Florida,

           Defendants.
_____/

## O R D E R

Plaintiffs Cyber Zone E-Café, Inc., ("Cyber Zone") and Jeffrey M. Reed have filed suit against Defendants Brad King, individually and as State Attorney for the Fifth Judicial Circuit in and for Marion County, Florida; Ed Dean, individually and as Sheriff of Marion County, Florida; and Samuel Williams, individually and as Chief of Police for the Ocala Police Department (Doc. 22).  The Plaintiffs contend that the Defendants acted both separately and in concert to seize Cyber Zone's assets, shut down the business, and prosecute Mr. Reed for violations of Florida's anti-gambling laws*.*  The Plaintiffs further contend that the Defendants violated the Plaintiffs' Fourth Amendment rights to be free from unreasonable searches and seizures.

The Plaintiffs have asserted three claims for damages and a claim for injunctive relief against each of the Defendants, all pursuant to 42 U.S.C. § 1983. The Plaintiffs also moved for a preliminary injunction (Doc. 2), which the Court denied on May 25, 2010 on the basis of Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746 (1971) (Doc. 27).

The case is now before the Court for consideration of Defendant Brad King's motion to dismiss (Docs. 26), to which the Plaintiffs have filed a response in opposition (Doc. 32).[1] Upon due consideration, and for the reasons set forth below, the Court concludes that the motion is due to be granted, and that all claims against Brad King are due to be dismissed in their entirety.

**Factual Background**

According to the Amended Complaint (Doc. 22), Cyber Zone has operated a retail store in Ocala, Florida, selling pre-paid long distance phone cards, internet access, printing, faxing, and copying services. Mr. Reed was the managing member of Cyber Zone and general manager of the store, located at 6837 SE Maricamp Road, Ocala, Florida. To promote the marketing of those services, Cyber Zone conducted on its in-store computers a game promotion or "sweepstakes" which it alleges was compliant with Florida Statute

---

[1] The Plaintiffs filed notices of voluntary dismissal as to Ed Dean in both his individual and official capacity (Docs. 37, 40), and on February 8, 2011, the Clerk entered Judgment dismissing with prejudice all claims against that Defendant (Doc. 39). On March 7, 2011, the Plaintiffs also filed a notice of voluntary dismissal as to Samuel Williams in both his individual and official capacity (Doc. 40). Therefore, the only remaining Defendant is Brad King.

§849.094, a part of Chapter 849 of the Florida Statutes regulating gambling and specifically addressing "game promotion in connection with sale of consumer products or services."[2]

On June 25, 2009, the Defendants arrested Mr. Reed and seized Cyber Zone's computers and other equipment on the ground that the operation of its game promotion or sweepstakes violated Florida's gambling laws. Mr. Reed was charged with keeping a gambling house in violation of Fla. Stat. §§ 849.01 and 849.02; possession of a coin operated device in violation of Fla. Stat. §§ 849.15 and 849.16; and conducting an illegal lottery in violation of § 849.09, Florida Statutes. In addition to the criminal case, the State also initiated a parallel civil forfeiture proceeding which is still in progress.[3]

The criminal proceedings came to trial on December 7-9, 2009. At the close of the State's case in chief the judge granted a defense motion for judgment of acquittal on the

---

[2]Fla. Stat. § 849.094 defines "game promotion" to mean "a contest, game of chance, or gift enterprise, conducted within or throughout the state and other states in connection with the sale of consumer products or services, and in which the elements of chance and prize are present." § 849.094(1)(a). The statute makes it unlawful to "design, engage in, promote, or conduct such a game promotion, . . . wherein the winner may be predetermined or the game may be manipulated or rigged" so as to: (1) "[a]llocate a winning game or any portion thereof to certain lessees, agents, or franchises;" or (2) "[a]llocate a winning game or part thereof to a particular period of the game promotion or to a particular geographic area." § 849.094(1)(b)(2)(a). It is also unlawful to arbitrarily remove, disqualify, disallow, or reject any entry; fail to award prizes offered; print, publish or circulate literature and/or advertising material that is false, deceptive, or misleading; and to require an entry fee, payment or proof of purchase as a condition of entering the game promotion. § 849.094(1)(b)(2)(b)-(e).

[3]To date, neither side has advised the Court of the status of the forfeiture proceedings, or of any criminal proceedings against Cyber Zone or Mr. Reed. The Court therefore presumes that any proceedings pending as of the date the motions to dismiss were filed are still ongoing in the Florida state courts.

ground of insufficient evidence. The judge did not rule as a matter of law that Cyber Zone and Mr. Reed were in compliance with Fla. Stat. § 894.094.

In early February 2010, Cyber Zone and Mr. Reed recommenced their business operation in a manner materially identical to that which was conducted prior to June 25, 2009. On April 14, 2010, officers from the Marion County Sheriffs Office and the Ocala Police Department executed a raid on Cyber Zone, seized the company's assets, and arrested the manager on duty. On April 16, 2010, Mr. Reed was arrested and charged with the same gambling offenses as in the previous prosecution. A second civil forfeiture case was filed on May 18, 2010. The arrest and seizure were made pursuant to warrants issued by a state judicial officer (other than the judge who presided at the earlier criminal trial). The Court presumes that these criminal and forfeiture proceedings remain pending.

The Plaintiffs contend that the legality of their mode of business was clearly established by the judge's judgment of acquittal in the prior criminal action, and that the prosecution of the present criminal case and civil forfeiture are nothing more than vindictive and blatant harassment for which the Plaintiffs are entitled to monetary and injunctive relief.

With respect to Defendant King, the Plaintiffs allege that he gave false advice to Marion County law enforcement officers that the Plaintiffs were violating Florida's gambling laws both before the June 25, 2009 arrest and seizure and before the April 14, 2010 arrest and seizure, and that Defendant King made false and malicious statements to the media concerning Cyber Zone's activities (Doc. 22, Count I).

The Plaintiffs further allege that Defendant King conspired with the other Defendants and various law enforcement officers "in the malicious investigation, false arrest and unconstitutional seizure of Plaintiffs' persons and property." (Doc. 22, ¶ 79). The Plaintiffs also seek a permanent injunction enjoining Defendant King from interfering with the Plaintiffs' business, from pursuing criminal charges against the Plaintiffs for alleged violations of Florida's gambling laws, and from making any statements to the media claiming that the Plaintiffs are engaged in an illegal gambling operation or otherwise disparaging or defaming the Plaintiffs' business (Doc. 22, Count IV).

### **Standard of Review**

In passing on a motion to dismiss under Rule 12(b)(6), the Court is mindful that "[d]ismissal of a claim on the basis of barebones pleadings is a precarious disposition with a high mortality rate." Int'l Erectors, Inc. v. Wilhoit Steel Erectors Rental Serv., 400 F.2d 465, 471 (5th Cir. 1968). For the purposes of a motion to dismiss, the Court must view the allegations of the complaint in the light most favorable to plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences that might be drawn from such allegations. Jackson v. Okaloosa County, Fla., 21 F.3d 1532, 1534 (11th Cir.1994); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). Furthermore, the Court must limit its consideration to the complaint and written instruments attached as exhibits. Fed R. Civ. P. 10(c); GSW, Inc. v. Long County, Ga., 999 F.2d 1508, 1510 (11th Cir.1993).

Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations of the complaint. Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). However, "while notice pleading may not require that the pleader allege a 'specific fact' to cover each element of a claim, it is still necessary that a complaint contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Roe v. Aware Woman Center for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001) (quotations omitted).

## Discussion

### I.  Prosecutorial Immunity

Defendant King first argues he is entitled to absolute prosecutorial immunity on all claims. However, prosecutorial immunity only applies to claims for monetary relief, therefore this argument can only apply to Count I of the Amended Complaint. Bolin v. Story, 225 F.3d 1234, 1342 (11th Cir. 2000). See also Supreme Court of Virginia v. Consumers Union of U.S., Inc., 446 U.S. 719, 736-38, 100 S.Ct. 1967, 1976-78 (1980).

The law is well established that prosecutors are entitled to absolute immunity from liability for damages under § 1983 which arise out of the performance of the traditional functions of their office. Imbler v. Pachtman, 424 U.S. 409, 427-28, 96 S.Ct. 984, 993-94 (1976). Such immunity is absolute with respect to those activities that are "intimately associated with the judicial phase of the criminal process." Van de Kamp v. Goldstein, ___ U.S. ___, 129 S.Ct. 855, 860 (2009) (quoting Imbler, 424 U.S. at 430, 96 S.Ct. at 995).

See also Rivera v. Leal, 359 F.3d 1350, 1353 (11th Cir. 2004) ("A prosecutor is entitled to absolute immunity for all actions he takes while performing his function as an advocate for the government."). "Those acts must include the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made." Buckley v. Fitzsimmons, 509 U.S. 259, 273, 113 S.Ct. 2606, 2615 (1993).

However, absolute immunity does not apply when a prosecutor is acting outside judicial proceedings, such as when a prosecutor gives advice to police during a criminal investigation, when a prosecutor performs the investigative functions normally performed by a police officer prior to an arrest, when the prosecutor makes statements to the press, or when a prosecutor acts as a complaining witness in support of a warrant application. See Van De Kamp, 129 S.Ct. at 861 (internal citations omitted); Buckley, 509 U.S. at 269, 113 S.Ct. at 2613; Burns v. Reed, 500 U.S. 478, 493, 111 S.Ct. 1936, 1943 (1991); Hart v. Hodges, 587 F.3d 1288, 1296 (11th Cir 2009). "A prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested." Buckley, 509 U.S. at 274, 113 S.Ct. at 2616.

The Plaintiffs do not base their claims against Defendant King on his decision to indict and/or prosecute Mr. Reed and Cyber Zone, or on any of Defendant King's actions during the June 25, 2009 trial. Rather, the Amended Complaint alleges that Defendant King "wrongfully, maliciously and for illegitimate reasons gave false advice to Marion County law enforcement officers" that the Plaintiffs were violating Florida's gambling laws,

both before the June 25, 2009 and April 14, 2010 arrests and seizures (Doc. 22, ¶¶ 77(a), (b)).  The Amended Complaint further alleges that Defendant King "[made] false and malicious statements to the media regarding the activities of Cyber Zone and the requirements of Florida law," (Id., ¶ 78), and "maliciously, willfully and for illegitimate purposes directed and/or participated in the investigation process. . . ." (Id., ¶ 80).  These allegations as stated would encompass functions outside the judicial process and, at the motion to dismiss stage, the Court must take the facts as alleged in the complaint as true.  Thus, the Court cannot say at this stage that Defendant King is entitled to absolute prosecutorial immunity, and his motion to dismiss on this point shall be denied.[4]

## II. Eleventh Amendment Immunity

Defendant King next argues that any claims against him in his official capacity must be dismissed because he is entitled to Eleventh Amendment immunity.

Pursuant to the Eleventh Amendment of the United States Constitution, states are immune from suits in federal court.  See Miccosukee Tribe of Indians of Fla. v. Fla. State Athletic Com'n, 226 F.3d 1226, 1231 (11th Cir. 2000).  This includes claims against a state for alleged deprivations of civil liberties under 42 U.S.C. § 1983.  Will v. Michigan Dept. of

---

[4]The Court notes that "a prosecutor is entitled to absolute immunity for the factual investigation necessary to prepare a case, including interviewing witnesses before presenting them to a grand jury."  Mullinax v. McElhenney, 817 F.2d 711, 715 (11th Cir. 1987).  However, without the benefit of a fully developed record, it is not possible to discern at this time whether the "investigative process" the Plaintiffs complain of consisted of the "factual investigation necessary to prepare a case," or the investigation functions normally performed by a police officer prior to arrest.

State Police, 491 U.S. 58, 66, 109 S.Ct. 2304, 2309-10 (1989).  However, immunity does not extend to claims for prospective injunctive relief seeking to end continuing violations. McClendon v. Georgia Dept. of Community Health, 261 F.3d 1252, 1256 (11th Cir. 2001); Summit Med. Assocs., P.C. v. Pryor, 180 F.3d 1326, 1336 (11th Cir. 1999). See also Ex parte Young, 209 U.S. 123, 159-60, 28 S.Ct. 441, 454 (1908).  Because Count IV as alleged seeks prospective injunctive relief, the Court finds that Eleventh Amendment immunity does not bar that claim.

Count I of the Amended Complaint (the only claim for monetary damages against Defendant King) can be interpreted to seek relief against Defendant King in both his individual capacity and in his official capacity as the State Attorney for the Fifth Judicial Circuit of Florida. (Doc. 22, p. 1, ¶ 4).  A lawsuit against a "government officer in his official capacity is the same as a suit against the entity of which the officer is an agent." Farrell v. Woodham, No. 2:01-cv-417-FTM29DNF, 2002 WL 32107645, at *2 (M.D. Fla. May 29, 2002); see also Michigan Dept. of State Police, 491 U.S. at 71, 109 S.Ct. at 2312 ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such it is no different from a suit against the State itself."). The State Attorney is an "arm of the state" and falls within the ambit of the State's Eleventh Amendment immunity.  See Perez v. State Attorney's Office, No. 6:08-cv-1199-Orl-31KRS, 2008 WL 4539430, at *2 (M.D. Fla. Oct. 8, 2008); Allen v. Moreland, No. 8:04-cv-2530-T17EAJ, 2005 WL 1572734, at *2 (M.D. Fla. June 30, 2005); Farrell, 2002 WL

32107645, at *3. Thus to the extent Count I is asserted against Defendant King in his official capacity, that claim is barred and shall be dismissed with prejudice.[5]

### III.   Qualified Immunity

Defendant King further seeks the protection of qualified immunity for the claims asserted against him in his individual capacity. "Qualified immunity offers complete protection for government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." Lee v. Ferraro, 284 F.3d 1188, 1193-94 (11th Cir. 2002). The purpose of qualified immunity is to allow officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, Anderson v. Creighton, 483 U.S. 635, 638-39, 107 S.Ct. 3034, 3038 (1987), "protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." Lee, 284 F.3d at 1194 (internal citation and quotation marks omitted).[6]

---

[5] The Court also agrees that Count I is due to be dismissed for the alternative reason that state officials such as Defendant King who are sued in their official capacity are not considered "persons" within the meaning of 42 U.S.C. § 1983. Mich. Dep't of State Police, 491 U.S. at 70-71, 109 S.Ct. at 2312.

[6] The Court's ruling that Defendant King is not entitled at this time to a dismissal based upon prosecutorial immunity does not impact his ability to obtain qualified immunity. When functions performed by a prosecutor "cast him in the role of an administrator or investigative officer rather than that of advocate," the prosecutor has the benefit only of qualified good-faith immunity. Fullman v. Graddick, 739 F. 2d 553, 558-60 (11th Cir.1984) (quoting Buckley, 509 U.S. at 275, 113 S.Ct. at 2616-17). See also Kadivar v. Stone, 804 F. 2d 635, 637 (11th Cir.1986) ("[a]lthough a prosecutor enjoys absolute immunity when engaging in quasi-judicial functions, he has only a qualified immunity when carrying out administrative or investigative functions.") (citing Marrero v. City of Hialeah, 625 F. 2d 499, 504-05 (5th Cir.1980)).

"[T]o receive qualified immunity, an official must first establish that 'he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'" McCullough v. Antolini, 559 F.3d 1201, 1205 (11th Cir. 2009) (quoting Lee, 284 F.3d at 1194). "If the official was acting within the scope of his discretionary authority the burden then shifts to the plaintiff to show that the grant of qualified immunity is inappropriate." Id.

As the Supreme Court recently reaffirmed in Pearson v. Callahan, ___ U.S.___, 129 S.Ct. 808 (2009), a court must grant qualified immunity to a government official unless the plaintiff can show: (1) that the facts viewed in the light most favorable to the plaintiff establish a constitutional violation by the officer; and (2) that the unlawfulness of the defendant's actions was "clearly established" at the time of the incident. See id. at 815-16, 818. This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." Lee, 284 F.3d at 1194 (internal citation and quotation marks omitted). Under Pearson, courts are now "permitted to exercise [their] sound discretion" to decide which prong of this inquiry to address first. Pearson, 129 S.Ct. at 818.

It is clear that Defendant King was acting within the scope of his discretionary authority with respect to all alleged acts in this case. (See Doc. 32, p. 8). Assuming for the purposes of this motion that the Plaintiffs' Amended Complaint asserts violations of their Fourth Amendment rights, the Court finds that Defendant King is entitled to qualified immunity because the unconstitutionality of his actions was not clearly established at the time of the June 2009 and April 2010 arrests and seizures.

There are no decisions by the United States Supreme Court, the Eleventh Circuit Court of Appeals, the federal district courts within this Circuit, the Florida Supreme Court, or any state district court of appeal addressing the intersection of Florida's anti-gambling laws and businesses operating in a manner similar to Cyber-Zone. See Oliver v. Fiorino, 586 F.3d 898, 907 (11th Cir. 2009) ("In order to determine whether a right is clearly established, we look to the precedent of the Supreme Court of the United States, this Court's precedent, and the pertinent state's supreme court precedent, interpreting and applying the law in similar circumstances."). Instead, the Plaintiffs rely entirely on the judgment of acquittal in Mr. Reed's December 7, 2009 criminal trial. According to the Plaintiffs, the judgment of acquittal conclusively demonstrates that at the time of their April 2010 arrest and seizure of property, it was clearly established that the Plaintiffs' conduct was not in violation of Florida law. As such, their arrest and seizure were patently and objectively unreasonable, violated their Fourth Amendment rights, and precludes the defense of qualified immunity.

The Plaintiffs read too much into the judgment of acquittal. The trial judge based the judgment of acquittal on insufficient evidence – the trial judge did not rule as a matter of Florida law that the Plaintiffs' actions were legal. To the contrary, the trial judge stated that it was possible that the Plaintiffs' conduct could be construed as illegal, but that the evidence presented in the December 7, 2009 trial, alone, was insufficient to establish a *prima facie* case (Doc. 22, Ex. J, p. 338). A judgment of acquittal in a criminal case based on insufficient evidence by a state trial court does not equate to a finding that the law in

Florida was clearly established in April 2010 that the Plaintiffs' conduct was legal (and therefore that it was sufficiently clear that a reasonable officer would understand that arresting the Plaintiffs' and seizing their property in April 2010 violated the Plaintiff's constitutional rights). Rather, the Court finds that there was no pre-existing law clearly establishing that in April 2010, the Plaintiffs had a lawful right to operate their business in the manner described in their Amended Complaint. See Randall v. Scott, 610 F.3d 701, 715 (11th Cir. 2010) ("Since we are aware of no precedential case with similar facts to those described here, we conclude that [the Plaintiff's] rights were not clearly established under materially similar facts.").

Because the law was not clearly established in April 2010 that the Plaintiffs' arrest and seizure was unlawful, Defendant King is entitled to qualified immunity, and all claims against him in his individual capacity shall be dismissed with prejudice.

## IV. Younger Abstention

Defendant King argues that the last remaining count – the claim for injunctive relief against Defendant King in his official capacity – must be dismissed under Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746 (1971).

Under the Younger abstention doctrine once a state prosecution is pending, a criminal defendant is barred from challenging the constitutionality of a state law in federal court except under very limited circumstances. A federal court could enjoin a pending state criminal proceeding only if "the danger of irreparable loss is both great and immediate," and

only if "the threat to the plaintiff's federally protected rights [is] one that cannot be eliminated by his defense against a single criminal prosecution." 401 U.S. at 45-46, 91 S.Ct. 746 (internal citation and quotation marks omitted).  To justify federal intervention, the Plaintiffs "must show manifest bad faith and injury that is great, immediate, irreparable, constituting harassment of the plaintiff in the exercise of his constitutional rights, and result in a deprivation of meaningful access to the state courts." Allee v. Medrano, 416 U.S. 802, 836, 94 S.Ct. 2191, 2210 (1974).

At the time the Plaintiffs initiated this lawsuit state court criminal and forfeiture proceedings were pending.  No party has provided any information to the Court establishing that these proceedings are concluded.  The Court will therefore presume that they are ongoing.  As such, and as this Court stated in its Order dated May 24, 2010 (Doc. 27), the existence of ongoing state court proceedings militates in favor of a finding that Younger abstention is appropriate.  The Plaintiffs have state court remedies that they are pursuing, during which they can litigate the same issues raised in their claim for injunctive relief.  Count IV shall therefore be dismissed in its entirety.[7]

---

[7]To the extent the state court proceedings have concluded and a final judgment rendered, Count IV would be subject to dismissal because the Court lacks subject matter jurisdiction to review a final state court decision. District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149 (1923).

## **Conclusion**

Accordingly, upon due consideration, it is hereby ORDERED as follows:

(1)     Defendant, State Attorney King's Motion to Dismiss (Doc. 26) is GRANTED and all claims brought against Defendant King, in both his official and individual capacity, are DISMISSED WITH PREJUDICE.  The Clerk is directed to enter judgment accordingly.

(2)     Pursuant to the Plaintiffs' Notice of Voluntary Dismissal (Doc. 41) and Fed. R. Civ. P. 41(a)(1), the Clerk is further directed to enter judgment dismissing with prejudice all claims against Defendant Samuel Williams in his individual and official capacity, each party to bear their own fees and costs.

(3)     Because all claims have now been fully and finally resolved, the Clerk is directed to terminate all other pending motions and to close the file.

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida this 22d day of March, 2011.

_____
UNITED STATES DISTRICT JUDGE

Copies to:    Counsel of Record
              Maurya A. McSheehy